UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

EDWARD MCGUIRE, JR.,

                Plaintiff,

-against-

CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF ENVIRONMENTAL
PROTECTION, CASWELL F. HOLLOWAY,
STEVEN W. LAWITTS, VINCENT
SAPIENZA, GEROULD J. MCCOY, JERRY
VOLGENDE, KEVIN BUCKLEY, PAUL
KISKORNA, MIKE MCGREGOR, STEVE
KOLLER, TONY FIALIO, and JOHN
MCCABE, LOCAL 1320, DISTRICT COUNCIL
37, A.F.S.C.M.E., AFL-CIO, and JAMES
TUCCIARELI,

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-814 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

On January 13, 2012, Plaintiff Edward McGuire, Jr. ("McGuire" or "Plaintiff") filed an Amended Complaint in the Supreme Court of the State of New York, County of Queens, where he asserted a First Amendment claim under 42 U.S.C. § 1983 and various state law causes of action. (Not. of Removal (Dkt. 1) at ECF pages 10-19.) Defendants removed the case to this court. (Id.) Plaintiff brings his First Amendment claim, as well as certain state law claims, against the City of New York, the New York City Department of Environmental Protection, Caswell F. Holloway, Steven W. Lawitts, Vincent Sapienza, Gerould J. McCoy, Jerry Volgende, Kevin Buckley, Paul Kiskorna, Mike McGregor, Steve Koller, Tony Fialio, and John McCabe (collectively, the "City Defendants"), and additional state law claims against Local 1320, District Council 37, A.F.S.C.M.E., AFL-CIO, and James Tucciareli (together, the "Union Defendants").

1

Before the court are both the City Defendants' and the Union Defendants' respective motions for summary judgment. For the reasons stated below, the City Defendants' motion for summary judgment is GRANTED on Plaintiff's First Amendment claim. The court declines to exercise supplemental jurisdiction over the remaining claims and, accordingly, remands those claims state court.

## I. BACKGROUND

### A. Facts

#### 1. Plaintiff's Employment

Plaintiff was hired as a Sewage Treatment Worker ("STW") by the New York City Department of Environmental Protection ("DEP") in 2004. (City Defs.' 56.1 Statement ("City Defs.' 56.1") (Dkt. 137-2) ¶¶ 5, 25; Pl.'s City 56.1 Statement ("Pl.'s City 56.1") (Dkt. 139-2) ¶¶ 5, 25.) The duties of an STW include checking and maintaining New York City sewer systems. (City Defs.' 56.1 ¶ 6.) Plaintiff was assigned to the Tallman Island Collections facility ("TIC") from 2004 until February 3, 2011. (City Defs.' 56.1 ¶ 7; Pl.'s City 56.1 ¶ 7.1.) On February 3, 2011, Plaintiff was transferred to the Tallman Island Plant ("TIP"), another DEP facility. (City Defs.' 56.1 ¶ 7; Pl.'s City 56.1 ¶ 7.1.)

#### 2. DEP Employee Concerns Hotline

In 2003, DEP established a program called the Employee EHS Concerns Hotline that allowed employees to report environmental, health and safety issues to the department. (June 3, 2003, Mem. (Decl. of Matthew H. Goldsmith in Opp'n to City's Mot. for Summ. J. ("Goldsmith Decl.") (Dkt.139-3), Ex. I (Dkt. 139-12)).) The hotline permitted DEP employees to report "hazard[s], risk[s] or unsafe condition[s]" to a supervisor. (City Defs.' 56.1 ¶ 30; Pl.'s City 56.1 ¶ 30.) A flyer circulated to employees in connection with the program stated: "If you

see or suspect [conduct that violates the environmental or health and safety laws], immediately notify your supervisor or call the EHS Employee Concerns Hotline." (June 3, 2003, Mem at 4.) In addition, DEP trained its employees, including STWs, on how to recognize unsafe conditions (Dep. Tr. of Nichola Acierno ("Acierno Dep.") (Goldsmith Decl., Ex. C (Dkt. 139-6)) at 52:19-25, 91:3-9) and, in accordance with the Employee EHS Concerns Hotline programs, STWs made unsafe condition reports (Dep. Tr. of Mitchell McCabe (Goldsmith Decl., Ex. D (Dkt. 139-7)) at 28:8-29:17, 105:16-25; see also Acierno Dep. at 52:8-10 (indicating that Acierno "probably" made unsafe condition reports)).

The gravamen of Plaintiff's complaint is that he was retaliated against because he reported unsafe conditions.

### 3. The Complaints

On November 3, 2008, Plaintiff filed an unsafe condition report, complaining about (1) difficulty opening two heavy metal doors at the 122 Pumping Station in College Point, New York, and (2) the placement of catch bins beneath drums to prevent the leakage of sewage. (City Defs.' 56.1 ¶ 33; Pl.'s City 56.1 ¶ 33.) Plaintiff also "expressed concern" that he could face retaliation for reporting allegedly unsafe conditions to the hotline. (City Defs.' 56.1 ¶ 35; Pl.'s City 56.1 ¶ 35.)

On October 16, 2009, Plaintiff filed a complaint alleging that DEP employees were instructed to report extra actions that they did not do. (City Defs.' 56.1 ¶ 36; Pl.'s City 56.1 ¶ 36.)

On December 30, 2009, Plaintiff filed an unsafe condition report alleging that a crane had toppled over at Rikers Island and needed attention. (City Defs.' 56.1 ¶ 37; Pl.'s City 56.1 ¶ 37.)

On January 4, 2010, Plaintiff filed an unsafe condition report alleging that five pumping stations had poor ventilation (City Defs.' 56.1 ¶¶ 38-39; Pl.'s City 56.1 ¶¶ 38-38), and that he therefore was concerned about entering the stations (City Defs.' 56.1 ¶ 40; Pl.'s City 56.1 ¶ 40).

On March 2, 2010, Plaintiff filed a complaint because he claimed to have been assigned a truck which was in need of repairs. (City Defs.' 56.1 ¶ 41; Pl.'s City 56.1 ¶ 41.) Plaintiff filed the complaint because he was concerned for his safety. (City Defs.' 56.1 ¶ 42; Pl.'s City 56.1 ¶ 42.)

On March 9, 2010, Plaintiff filed an unsafe condition report, he sought clarification as to whether ladders could be safely placed past the height of a truck. (City Defs.' 56.1 ¶ 43; Pl.'s City 56.1 ¶ 43.)

On October 5, 2010, Plaintiff filed a complaint alleging, inter alia, that there was flooding in a sewer system. (Complaints (Decl. of Deena Mikhail in Supp. of Union Defs.' Mot. for Summ. J. ("Mikhail Decl.") (Dkt. 133-1)), Ex. H (Dkt. 133-9) at IDS00010.)

On October 6, 2010, Plaintiff filed an unsafe condition complaint with Commissioner Holloway alleging that he had been retaliated against for previously reporting unsafe conditions. (City Defs.' 56.1 ¶ 44; Pl.'s City 56.1 ¶ 44.)

On November 5, 2010, Plaintiff filed an unsafe condition complaint claiming that there were no lights at the Park Drive pumping station. (Complaints at IDS00011.)

On January 5, 2011, Plaintiff filed an unsafe condition report claiming that he had found unsafe gases in a sewer system. (Id. at IDS00012.)

On January 19, 2011, Plaintiff filed an unsafe condition report claiming that he had found leaking sewage outside of a sewer system. (Id. at IDS00013.)

4. Alleged Retaliation

Plaintiff alleges that, as a result of his complaints, he was retaliated against in a number of ways including that he: (1) was administratively transferred to TIP (City Defs.' 56.1 ¶¶ 79-93; Pl.'s City 56.1 ¶¶ 79-93), (2) lost overtime opportunities (City Defs.' 56.1 ¶¶ 94-103; Pl.'s City 56.1 ¶¶ 94-103), (3) received less desirable assignments (City Defs.' 56.1 ¶¶ 104-12; Pl.'s City 56.1 ¶¶ 104-12), (4) lose weekend shifts (City Defs.' 56.1 ¶ 113; Pl.'s City 56.1 ¶ 113), (5) was denied vacation requests (City Defs.' 56.1 ¶¶ 114-18; Pl.'s City 56.1 ¶¶ 114-18), (6) was denied the privilege of working with certain people and driving commercial vehicles (City Defs.' 56.1 ¶¶ 119-22; Pl.'s City 56.1 ¶¶ 119-22), and (7) was subjected to verbal abuse (City Defs.' 56.1 ¶¶ 123-46; Pl.'s City 56.1 ¶¶ 123-46).

5. Union's Response to the Alleged Retaliation

Plaintiff further alleges that his union, Local 1320, failed to represent him in connection with the alleged retaliatory acts. (Union Defs.' 56.1 Statement ("Union 56.1") (Dkt. 135) ¶ 19; Pl.'s Resp. to Union Defs.' 56.1 Statement ("Pl.'s Union 56.1") ¶ 19.)

**B. Procedural History**

On February 17, 2011, Defendants removed Plaintiff's Amended Complaint to this court. (Not. of Removal.) On May 23, 2012, the City Defendants filed a fully briefed motion to dismiss pursuant Federal Rule of Civil Procedure 12(b)(6). (City Mot. to Dismiss (Dkt. 16).) On the same day, the Union Defendants filed a fully briefed motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (Union Mot. to Dismiss (Dkt. 15).) The court determined that it had subject matter jurisdiction over the case because Plaintiff alleged a federal claim. (Jan 25, 2013, Mem. & Order (Dkt. 21).) The court converted the motions into motions for summary judgment pursuant to Rule 56, and reserved judgment. (Id.) The parties proceeded to

discovery, which was completed on December 24, 2013. (November 25, 2013, Min. Entry (Dkt. 55)).) On August 21, 2015, the City Defendants filed their fully briefed motion for summary judgment (Mot. for Summ. J. (Dkt. 137)); the Union Defendants did the same (Mot. for Summ. J. (Dkt. 133)).

## II. LEGAL STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the court "is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003); see also Anderson, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

The moving party bears the initial burden to show an absence of genuine factual dispute. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will be granted if the opposing party then "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the opposing party must do more than demonstrate "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and may not rely on "conclusory allegations," Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990).

6

## III. THE CITY DEFENDANTS' MOTION

### A. First Amendment Retaliation

#### 1. Governing Law

"To survive summary judgment on a First Amendment retaliation claim, a public employee 'must bring forth evidence showing that he has engaged in protected First Amendment activity, he suffered an adverse employment action, and there was a causal connection between the protected activity and the adverse employment action.'" Anemone v. Metro. Transp. Auth., 629 F.3d 97, 114 (2d Cir. 2011) (quoting Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007)).

*a. Protected First Amendment Activity*

i. The First Amendment and the Needs of Government Employers

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). "At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968); see also Garcetti, 547 U.S. at 418 ("Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services."). Instead, in the public employee setting, an employee's right to free speech is balanced against the needs of the employer:

> Pickering and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to

> public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

Garcetti, 547, U.S. at 418 (citing Pickering, 391 U.S. at 568; Connick v. Myers, 461 U.S. 138, 147 (1983)). "In Garcetti, the Court parsed the first of the above 'two inquiries' into separate questions as to (1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011).

### ii. Citizen or Employee

"If the employee did not speak as a citizen, the speech is not protected by the First Amendment." Jackler, 658 F.3d at 237. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." Garcetti, 547 U.S. at 421. "The proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." Id. at 424-25. "[S]peech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." Weintraub v. Bd. of Educ., 593 F.3d 196, 203 (2d Cir. 2010).

"The inquiry into whether a public employee is speaking pursuant to her official duties is not susceptible to a brightline rule. Courts must examine the nature of the plaintiff's job

8

responsibilities, the nature of the speech, and the relationship between the two. Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision." Ross v. Breslin, 693 F.3d 300, 306 (2d Cir. 2012) (internal citations and quotations omitted).

The Second Circuit has set forth a number of factors that may guide district courts in conducting this inquiry. First, and tautologically, a plaintiff speaks as an employee if the speech is what the employee was "employed to do." Matthews v. City of New York, 779 F.3d 167, 174 (2d Cir. 2015). Second, "speech is not protected if it is 'part-and-parcel of [the employee's] concerns about his ability to properly execute his duties.'" Id. at 173 (2d Cir. 2015) (quoting Weintraub, 593 F.3d at 203). Third, a plaintiff is more likely to speak as an employee if his or her speech does not have a citizen analogue. See Weintraub, 593 F.3d at 203-04 ("Although the lack of a citizen analogue is not dispositive in this case, it does bear on the perspective of the speaker—whether the public employee is speaking as a citizen—which is the central issue." (internal citation and quotation marks omitted)).

### iii. Public Concern

"[T]he boundaries of the public concern test are not well defined." City of San Diego v. Roe, 543 U.S. 77, 83 (2004) (per curium). Nonetheless, the core of the doctrine is clear; "the standard for determining whether expression is of public concern is the same standard used to determine whether a common-law action for invasion of privacy is present." Id. Cases analyzing the common law "make clear that public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." Id. at 83-84 (citing Cox Broad. Corp. v. Cohn, 420 U.S. 469 (1975); Time, Inc. v. Hill, 385 U.S. 374 (1967)). Put another way, "[t]o constitute

speech on a matter of public concern, an employee's expression must 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Jackler, 658 F.3d at 236 (quoting Connick, 461 U.S. at 146).

However, courts must be careful to heed the Supreme Court's warning that "[g]overnment offices could not function if every employment decision became a constitutional matter." Garcetti, 547 U.S. at 419 (quoting Connick, 461 U.S. at 143). Therefore, "[s]peech that, although touching on a topic of general importance, primarily concerns an issue that is 'personal in nature and generally related to [the speaker's] own situation,' such as his or her assignments, promotion, or salary, does not address matters of public concern." Jackler, 658 F.3d at 236 (quoting Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775, 781 (2d Cir. 1991)).

        iv.    Adequate Justification

"A government employer may take an adverse employment action against a public employee for speech on matters of public concern if: (1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for disruption outweighs the value of the speech; and (3) the employer took the adverse employment action not in retaliation for the employee's speech, but because of the potential for disruption." Johnson v. Ganim, 342 F.3d 105, 114 (2d Cir. 2003) (citing Jeffries v. Harleston, 52 F.3d 9, 13 (2d Cir. 1995)); see also Pickering, 391 U.S. 562 (1968).

    *b. Adverse Employment Action*

"In the context of a First Amendment retaliation claim, [the Second Circuit has] held that '[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'" Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004) (quoting Dawes v. Walker, 489 F.3d 492

(2d Cir. 2001)).[1] A plaintiff must show that "an alleged act of retaliation is more than de minimis." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006) (citing Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir. 1999)) (collecting cases). Ultimately, "whether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination." Hoyt v. Andreucci, 433 F.3d 320, 328 (2d Cir. 2006).

Nonetheless, the Second Circuit has indicated that "[a]dverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. This list of retaliatory conduct is certainly not exhaustive, however, and lesser actions may also be considered adverse employment actions." Zelnik, 464 F.3d at 226 (internal citations and quotation marks omitted).

### c. Causation

At the summary judgment phase, a plaintiff must point to "sufficient evidence . . . in the record to 'warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action.'" Dillon, 497 F.3d at 251 (quoting Cotarelo v. Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247, 251 (2d Cir. 2006)). A plaintiff may show that protected speech was a substantial motivating factor in the adverse employment action taken against them in a number of ways. First, and most simply, a plaintiff may introduce evidence of "openly displayed animus . . . because of" the protected speech. Id. at 251. Alternatively, a plaintiff may point to "circumstantial evidence from which the jury could infer" a causal connection. Id. at 252. "In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed

---

[1] The Second Circuit "has not held that 'a public employee plaintiff is required to show that the defendants' action had an actual chilling effect.'" Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006) (quoting Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir. 2005)).

in time by the adverse [employment] action.'" Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001) (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)); see also Nagle v. Marron, 663 F.3d 100, 110 (2d Cir. 2011).

    2.    Application

The City Defendants first argue that Plaintiff cannot raise a triable issue of material fact because he "was clearly acting pursuant to his official duties as an STW and, therefore, was not speaking as a private citizen when he made telephone complaints to DEP regarding allegedly hazardous conditions in his workplace." (City Defs.' Mem. of Law in Supp. of Summ. J. ("City Defs. Mem.") (Dkt. 137-1) at 3.) They are correct.

As a preliminary matter, the mere fact that McGuire's speech occurred at work, rather than in a public sphere, does not require a finding that his speech was unprotected, private speech. See Garcetti, 547 U.S. at 420 ("Employees in some cases may receive First Amendment protection for expressions made at work."); Jackler, 658 F.3d at 235 ("The fact that a statement was made to the employer in private is not determinative of whether its subject was a matter of public concern."). Likewise, the fact that McGuire's speech "concerned the subject matter of [his] employment . . . is nondispositive." Garcetti, 547 U.S. at 421.

It is dispositive that McGuire's speech was made pursuant to his duties as an STW. See Garcetti, 547 U.S. at 421. The court finds for three related but independent reasons that McGuire was speaking as an employee when he raised safety concerns at DEP.

First, the record requires a finding that Plaintiff's complaints were a "means to fulfill and undertaken in the course of performing his primary employment responsibility." Weintraub, 593 F.3d at 203 (internal quotation marks and citation omitted). Each of Plaintiff's complaints concerned the maintenance of the sewer system, which was Plaintiff's core job responsibility.

12

Indeed, the fact that DEP trained STWs on how to recognize unsafe conditions and that other STWs made unsafe condition reports indicates that STW's job duties included the filing of unsafe condition reports.[2] Accordingly, the court finds that part of McGuire's job was to report unsafe conditions to DEP.

This conclusion is strengthened by the fact that McGuire's speech occurred because he was employed in a position that "allowed" such speech. See Looney v. Black, 702 F.3d 701, 712 (2d Cir. 2012) (finding that a plaintiff spoke as an employee where the plaintiff spoke "because he was in an official position that . . . allowed[] him to do so."). STWs, such as McGuire, were employed to check and maintain the New York City sewer systems. Because STWs had frontline access to the sewer systems, DEP created a program that allowed employees to report to a supervisor conditions that she believes to be a hazardous, risky, or unsafe condition. Although Plaintiff certainly had job obligations beyond reporting unsafe conditions, his official position permitted him both access and means to make the complaints. Courts in this circuit have found such conditions indicative of speech made in the course of an employee's job duties. See, e.g., Breslin, 693 F.3d 300, 306 (2d Cir. 2012) (finding that a plaintiff spoke as an employee in part because "she acquired all of the information she relayed to [a superior] in the ordinary course of performing her work"); Carter v. Incorporated Village of Ocean Beach, 415 F. App'x 290, 293 (2d Cir. 2011) (summary order) ("Plaintiffs' allegations establish no more than that they reported what they believed to be misconduct by a supervisor up the chain of command—misconduct they

---

[2] It is not the case that no STW employee could speak as a citizen if she complained of unsafe conditions in the sewers. Second Circuit precedent is clear that an employee who does not have policy making authority speaks as a citizen when they disclose or critique governmental policy. See, e.g., Matthews v. City of New York, 779 F.3d 167 (2d Cir. 2015) (police officer speaking about stop-and-frisk policy speaks as a citizen); Dillon v. Suffolk Cty. Dep't of Health Servs., 917 F. Supp. 2d 196, 210 (E.D.N.Y. 2013) (distinguishing Weintraub on the grounds that "Plaintiff's complaints referred to systemic mistreatment and corruption extending outside of her own personal duties"). Here, McGuire does not—and could not plausibly—allege that his speech was a broad critique of DEP policy that extended beyond his duties.

knew of only by virtue of their jobs as police officers and which they reported as 'part-and-parcel of [their] concerns about [their] ability to properly execute [their] duties.'" (internal citations omitted) (alteration in original)); Huth v. Haslun, 598 F.3d 70, 74 (2d Cir. 2010) ("Here the record shows that [plaintiff] passed along [another employee's] concerns about the actions of certain Thruway Authority employees to the head of [plaintiff's] division and that [plaintiff] did so at daily meetings when they discussed the employees in their division. . . . We have no difficulty concluding that such speech was made not as a 'citizen' but, rather, pursuant to [plaintiff's] official duties as a Thruway Authority employee and supervisor."); Panse v. Eastwood, 303 F. App'x 933, 935 (2d Cir. 2008) (summary order) (finding no first amendment protection when "[Plaintiff's] statements—encouraging his students to participate in a for-profit course he was considering teaching outside of school that would include the drawing and sketching of nude models—were made to his own students, at school, during class, concerning a topic that he alleges he believed to be of importance to their continuing art education").[3] Accordingly, the court determines that a careful analysis of McGuire's job duties requires a finding that McGuire spoke as an employee when he made his safety complaints.

Second, McGuire's speech was made through official channels. Courts in this circuit have found, that where an employee speaks only through official channels, rather than publicly, they are more likely to be speaking as an employee. See Massaro v. N.Y.C. Dep't of Educ., 481 F. App'x 653, 655-56 (2d Cir. 2012) (summary order) ("The district court's conclusion that [plaintiff] spoke as an employee rather than a private citizen is supported by the facts that she aired her complaints only to several school administrators rather than to the public."). This rule makes good sense because, "[o]fficial communications have official consequences, creating a

---

[3] Moreover, the fact that McGuire's colleagues and superiors told him to cease making safety reports does not make his speech protected. Anemone v. Metro. Transp. Auth., 629 F.3d 97, 116 (2d Cir. 2011).

14

need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission." Garcetti, 547 U.S. at 422-23. Accordingly, the court determines that McGuire's mode of speech favors a finding that McGuire spoke as an employee.

Third, McGuire's speech does not have a citizen analogue. Each of McGuire's complaints was made either to a DEP supervisor or through the hotline; indeed, McGuire does not allege that he engaged in speech through any channels available to the public. See, e.g., Bearss v. Wilton, 445 F. App'x 400, 404 (2d Cir. 2011) (summary order) (finding no citizen analogue where "[plaintiff's] statements were made in a forum not available to citizens who [] are not employees of the City"); Milardo v. Town of Westbrook, --- F. Supp. 3d ---, No. 13-CV-1232 (VAB), 2015 WL 4723661, at *6 (D. Conn. Aug. 10, 2015) (channels available only to employees have no citizen analogue); Ross v. N.Y.C. Dep't of Educ., 935 F. Supp. 2d 508, 519 (E.D.N.Y. 2013) (complaint to union representative has no citizen analogue).

Plaintiff's argument that he spoke as a citizen is unavailing. Plaintiff argues that because the DEP Office of Environmental Health and Safety and Handling ("OEHS") is responsible for ensuring compliance with environmental, health, and safety regulations, and because Plaintiff was not employed by OEHS, ensuring safe conditions could not have been part of his official duties. (Pl.'s Mem. of Law in Opp'n to City Defs.' Mot. for Summ. J. ("Pl.'s City Mem.")) (Dkt. 139-2) at 3.) As a preliminary matter, Plaintiff provides no legal authority in support of his claim. More fundamental, he does not contest that the unsafe condition reporting program allowed all DEP employees to report unsafe conditions to supervisors (Pl.'s 56.1 ¶¶ 30-31), nor does Plaintiff contest that his job as an STW required him check and maintain the sewer system

(City Defs.' 56.1 ¶ 6). At most, the evidence Plaintiff adduces demonstrates that DEP utilizes parallel safety systems—the OEHS system and the employee reporting system. Plaintiff's evidence does not, however, raise a genuine issue of material fact as to whether Plaintiff's job responsibilities included reporting unsafe conditions in the sewer system.

The court recognizes that determining whether a plaintiff speaks as a citizen or an employee is a contextual inquiry, which is not readily confined to brightline rules. Breslin, 693 F.3d at 306 (2d Cir. 2012). Nonetheless, after a careful review of the record, the court finds that Plaintiff has failed to raise a genuine issue of material fact as to whether he was speaking as a citizen. Because Plaintiff spoke as an employee when he made his complaints, his speech is not entitled to First Amendment protection. Accordingly, the City Defendants' motion for summary judgement on Plaintiff's First Amendment retaliation claim is GRANTED.[4]

## IV. SUPPLEMENTAL JURISDICTION

Plaintiffs remaining claims against the City Defendants all arise under New York state law. (See, e.g., Pl.'s City Mem. at 5 (N.Y. Lab. Law § 215), 5-6 (N.Y. Lab. Law § 740), 6-7 (N.Y. Civ. Serv. Law § 75-b).)

Likewise, Plaintiff's lone claim against the Union Defendants arises under New York law. Plaintiff alleges that Local 1320 violated his right to fair representation. (Union Defs.' 56.1 ¶ 18.) Allegations that a public employee union violated the duty of fair representation are properly treated as state law claims. Bacchus v. City of New York, No. 12-CV-1663 (WFK), 2013 WL 1345153, at *2 (E.D.N.Y. Mar. 29, 2013) ("Although the State and its political subdivisions are excluded from the definition of employer contained in

---

[4] The court need not and does not consider the City Defendants' additional arguments as to whether Plaintiff spoke on a matter of public concern or whether Plaintiff has sufficiently shown causation. Nor does the court consider Defendants' arguments regarding individual or municipal liability.

subdivision (2) of section 2 of the National Labor Relations Act . . . the courts in New York have recognized a similar duty of fair representation on the part of public sector unions predicated on their role as exclusive bargaining representatives." (quoting Civil Serv. Bar Ass'n, Local 237, Int'l Bhd. of Teamsters v. City of New York, 474 N.E.2d 587, 590-91 (1984))); D'Onofrio v. City of New York, No. 07-CV-0731 (CBA) (LB), 2010 WL 4673879, at *9 (E.D.N.Y. Sept. 14, 2010) (collecting cases), report and recommendation adopted, 2010 WL 4673948 (E.D.N.Y. Nov. 5, 2010); Straker v. Metro. Transit Auth., 333 F. Supp. 2d 91, 104 (E.D.N.Y. 2004) ("The [Labor Management Relations Act], however, does not vest federal district courts with subject matter jurisdiction over claims by public employees against their unions for breach of the duty of fair representation."); Cunningham v. Local 30, Int'l Union of Operating Eng'rs, 234 F. Supp. 2d 383, 395 (S.D.N.Y. 2002) (finding that a claim for breach of the duty of fair representation against a New York City union was a state law claim because "courts have consistently held that public employees cannot bring claims under NLRA and LMRA provisions").

The district court has broad discretion as to whether to exercise its supplemental jurisdiction over state law claims where all federal claims have been dismissed from a suit. See 28 U.S.C. § 1367(c). In making this decision, the court should balance the traditional "values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). The Supreme Court and the Second Circuit have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)); see also Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are

eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims." (quoting Cohill, 484 U.S. at 350 n.7) (alternation in original)). The court sees no reason to depart from this general rule and, accordingly, declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## V.  CONCLUSION

For the reasons discussed above, the City Defendants' motion for summary judgment is GRANTED with regard to Plaintiff's First Amendment claim. The court declines to exercise supplemental jurisdiction over the remaining state law claims and therefore remands the case to state court. See Cohill, 484 U.S. at 357 ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate"); Sunnen v. N.Y. Dep't of Health, 544 F. App'x 15, 17 (2d Cir. 2013) (summary order) (indicating that remand, rather than dismissal, is the proper disposition).

SO ORDERED.

Dated: Brooklyn, New York
December 7, 2015

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge